**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**HAILEY TAYLOR**                                                                    **PLAINTIFF**

**V.**                                                               **NO. 3:23-CV-401-DMB-RP**

**RICK PRECIADO, et al.**                                                    **DEFENDANTS**

## OPINION AND ORDER

After she was arrested and lost custody of her minor child, Hailey Taylor sued Marshall County, Marshall County Department of Child and Family Services, some county officers and employees, and other individuals, alleging they conspired to deprive her of numerous constitutional rights, including the right to custody of her child. Arguing jurisdictional bars, qualified immunity, and Hailey's failure to state a claim, Mississippi Department of Child Protection Services, Kaitlyn Yielding, Latrice Dillard, and Cherodrick Jeffries move to dismiss Hailey's complaint as to the claims against them. Because sovereign immunity, qualified immunity, and/or the Mississippi Torts Claims Act bar some of Hailey's claims, the motion to dismiss will be granted in part.

## I
## Procedural History

On October 18, 2023, Hailey Taylor filed a pro se complaint in the United States District Court for the Northern District of Mississippi, naming as defendants Rick Preciado, Kaitlyn Yielding, Cherodrick Jeffries, Latrice Dillard, Sarah Jean Liddy, Amy Taylor, Kim Underwood, Tina Bennet, Matthew Taylor,[1] Marshall County, Marshall County Department of Child and

---

[1] Because Hailey Taylor, Amy Taylor, and Matthew Taylor have the same surname, they will be referenced by their first names to avoid confusion.

Family Services ("MDCPS"),[2] and John Does 1-10.[3]  Doc. #1.[4]  In the complaint, Hailey asserts federal and state law claims based on allegations of "a conspiracy between state officials …, employees of a regional state agency, and a youth court referee … who sanctioned and actively participated in the furtherance of several private parties' plan to wrongfully deprive [her of] her civil rights," which, among other things, resulted in her arrest, a warrantless search, and her subsequent loss of custody of her minor child.  *Id.* at 4, 5–13.  Hailey seeks compensatory and punitive damages, and declaratory and injunctive relief, among other things.  *Id.* at 40–41.

On September 18, 2024, Yielding, Dillard, Jeffries, and MDCPS (collectively, "MDCPS Defendants") filed a motion to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. #95.  Hailey responded in opposition to the motion October 4, 2024.[5]  Doc. #100.  The MDCPS Defendants replied on October 11, 2024.  Doc. #104.

**II**
**Standards**

A motion under Federal Rule of Civil Procedure 12(b)(1) asserts a lack of subject-matter jurisdiction.  In evaluating a Rule 12(b)(1) motion, a court may consider the complaint alone, undisputed facts in the record, and the court's resolution of disputed facts.  *Morris v. Thompson*,

---

[2] In the answer filed by Mississippi Department of Child Protection Services on June 14, 2024, it claims it was "incorrectly identified in the Complaint as 'Marshall County Department Child and Family Services' and 'Marshall County Department of Child Protection Services.'"  Doc. #53 at 1.

[3] The complaint's body and/or caption specifies that Preciado, Yielding, Jeffries, Dillard, and Liddy are sued in their official and individual capacities.  The complaint does not specify the capacity in which Amy, Bennett, Underwood, and Matthew are sued.

[4] On August 14, 2024, Hailey filed an amended complaint with leave of the Court.  Docs. #72, #75.  Two weeks later, United States Magistrate Judge Roy Percy struck the amended complaint on motion by the County, Liddy, and Preciado because the amended complaint differed significantly from the proposed amended complaint Hailey was granted leave to file.  Doc. #85.  Since the amended complaint was stricken, the Court denied as moot the motion to dismiss the amended complaint filed by Yielding, Dillard, and MDCPS.  Doc. #106.

[5] Hailey's response is untimely.  *See* L.U. Civ. R. 7(b)(4) (setting fourteen-day response deadline).  Because the MDCPS Defendants' response does not raise the untimeliness of Hailey's response, the Court excuses the untimeliness in the interest of judicial efficiency.

852 F.3d 416, 419 (5th Cir. 2017) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  The allegations in the complaint are taken as true in determining whether a sufficient basis for jurisdiction exists.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  The burden of establishing jurisdiction rests on the party asserting its existence.  *Morris*, 852 F.3d at 419 (citing *Ramming*, 281 F.3d at 161).  If subject-matter jurisdiction is lacking, the case must be dismissed.  *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the pleading, on its face, must demonstrate that there exists a plausibility for entitlement to relief."[6] *Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483, at *1 (5th Cir. May 31, 2024).  "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).  The complaint's allegations "must be accepted as true and viewed in the light most favorable to the plaintiffs."  *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021).  But "conclusory allegations, unwarranted factual inferences, or legal conclusions" are not deemed true.[7]  *Aris-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

---

[6] While pro se plaintiffs are held to a more lenient standard, they "must still plead factual allegations that raise the right to relief above the speculative level."  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

[7] Hailey argues the motion to dismiss should be treated as a motion for judgment on the pleadings under Rule 12(c) because Yielding, Dillard, and MDCPS answered the operative complaint.  Doc. #101 at 17–18.  A Rule 12(b)(6) motion may be treated as a motion for judgment on the pleadings if filed after an answer to the complaint.  *Cox v. Richards*, 761 F. App'x 244, 247 (5th Cir. 2019); *see Armstrong v. Ashley*, 918 F.3d 419, 422 n.3 (5th Cir. 2019) ("District courts *may* consider untimely Rule 12(b)(6) motions as Rule 12(c) motions.") (emphasis added).  Yielding, Dillard, and MDCPS answered the complaint before the present motion was filed so to that extent the Court could treat the motion as one seeking judgment on the pleadings.  Docs. #30, #33, #53.  Jeffries has not answered the complaint but service of process was not perfected on him until after the amended complaint was stricken, Doc. #86, so as to him the present motion is properly considered Rule 12(b)(6).  The Court is not aware of an instance

3

When dismissal of a complaint is sought based on both lack of jurisdiction and failure to state a claim, the jurisdictional challenge should be addressed first. *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 481 (5th Cir. 2024).

### III
### Relevant Factual Allegations

On October 24, 2016, Hailey Taylor filed a petition for divorce and for a temporary restraining order in the "First District Chancery Court of Mississippi"[8] against Matthew Taylor, the father of her minor child. Doc. #1 at 5, 6. In November 2016, the chancery court issued a temporary restraining order instructing Matthew to remain 500 feet away from Hailey and their child. *Id.* at 6. Hailey and Matthew came to a custody agreement on November 16, 2017, which gave Hailey full custody of their child and Matthew reasonable, but supervised, visitation. *Id.* In 2018, Hailey and the child moved to Union County to live with Hailey's mother so the child could attend school there. *Id.*

On October 15, 2020, Hailey and the child spent the night at her father's downstairs apartment which is in the same building as her family's restaurant—Phillips Grocery—as is the upstairs apartment where they previously resided, which mainly served as a storage area for Hailey's small business. *Id.* at 7. When Hailey woke her child on October 16, 2020, he had a slight fever so Hailey called his school and kept him home with her. *Id.* At the child's request, Hailey let him watch cartoons and she fell asleep. *Id.* Hailey woke to the sound of her child's voice in the area that connects the restaurant with the apartments. *Id.*

---

where a 12(b)(6) motion is treated as a 12(c) motion as to some defendants but not others. The standard of review as to each is generally the same.

[8] The complaint is unclear as to the county where Hailey filed for divorce and a temporary restraining order against Matthew. Marshall County is in Mississippi's 18th Chancery Court District. *See* https://18thchanceryms.com/ (last visited Sep. 24, 2025). Union County is in the 1st Chancery Court District. *See* https://1stchanceryms.com/ (last visited Sep. 24, 2025).

Unbeknownst to Hailey, employees of the restaurant (and Matthew's close friends)—Amy Taylor, Kimberly Underwood, and Tina Bennet—contacted Narcotics Officer Rick Preciado earlier that morning and accused Hailey of having drugs in the building. *Id.* at 5. Officer Preciado had already arrived at the building when Hailey began to search for her child. *Id.* at 8. When she did not find her child in the back foyer, Hailey headed up the back staircase to the upstairs apartment. *Id.* A man dressed in plain clothing, who Hailey later learned was Rick Preciado, then stepped out into the back foyer with Amy and Bennet and requested Hailey come down to talk with him but Hailey declined. *Id.* At that point, Preciado charged up the stairs behind Hailey. *Id.* Hailey told Preciado he was not allowed in the private residence areas of the building but Preciado responded, "You invited me up when you did not stop," to which Hailey replied, "No, I most certainly did not!" *Id.* Preciado grabbed Hailey's arm, twisted it behind her, slamming her face down on a chair at the landing, and instructed Amy to go to his truck and get his handcuffs, which made Hailey realize Preciado must be a police officer. *Id.* Upon that realization, Hailey screamed for help. *Id.* Preciado continued to hold Hailey's arm behind her back. *Id.* Amy returned with Preciado's handcuffs and assisted with her arrest. *Id.* at 9. Preciado took Hailey downstairs and, after she had words with Amy and Bennet, pushed her toward the restaurant door, walked her outside, and forced her to sit on the restaurant's front porch. *Id.* at 9.

Preciado then searched the building without a warrant or consent. *Id.* Preciado also contacted MDCPS after stepping in feces left by Hailey's puppy. *Id.* Eventually, Preciado charged Hailey with possession of drug paraphernalia and resisting arrest. *Id.* The possession charge was later dropped, and Hailey pled no contest to the resisting arrest charge. *Id.* at 9–10.

MDCPS Field Officer Kaitlyn Yielding arrived on scene to investigate, and spoke to Hailey while she was handcuffed in the back of the police car. *Id.* at 10. Hailey told Yielding that her

5

stepmother had already been called but also provided Yielding with her mother's phone number and the number of a family friend who lived down the street. *Id.* She explained to Yielding that she and the child lived in Union County now and had only spent the night in Marshall County because she was helping her father who had recently suffered a heart attack. *Id.*

Amy, Bennet, and Underwood provided Yielding with Matthew's phone number, told Yielding Matthew was a great father, and accused Hailey of abusing her son. *Id.* Yielding then entered the private residence to take photographs without a warrant or consent, and called Matthew to come pick up the child. *Id.* Yielding also contacted the child's school and instructed the administration Hailey should not have any contact with the child. *Id.*

Yielding created a safety plan with Matthew which transferred the child's custody to him and denied Hailey from having any contact with the child. *Id.* Hailey was not included in the creation of the plan and did not sign or agree to it, nor was she informed that she was not allowed to contact the child. *Id.* at 10–11. The safety plan claimed the child was found in a home that contained methamphetamine, meth pipes, and pills. *Id.*

Upon her release the same evening, Hailey tried to regain custody of the child but Matthew instructed her to call MDCPS. *Id.* When Hailey protested the imposition of the safety plan, Yielding sent her a copy of a Safety Plan Order issued by Sarah Jean Liddy.

On November 10, 2020, a safety plan review hearing was conducted at which Hailey was not allowed to speak and could not contest the jurisdiction of the court or removal of the child from her, cross-examine the witnesses called to testify against her, or present any evidence on her own behalf. *Id.* at 12. Hailey acquired counsel shortly after her arrest but her attorney did not appear at the hearing. *Id.* Preciado testified about the October 16, 2020, events. *Id.* Yielding's testimony included that the child had a negative drug screen and his forensic interview results were

not indicative of abuse or neglect, and that the substance provided to Preciado by Amy, Bennet, and Underwood was not tested or confirmed to be methamphetamine and the pills found in the apartment were over-the-counter heartburn medication. *Id.* at 11, 12. Liddy ordered the case to move forward formally, and ordered Hailey and Matthew to submit to drug testing. *Id.* at 12. Hailey's results were negative for drugs; Matthew did not submit to the testing. *Id.*

A petition for formal proceedings was filed December 31, 2020. *Id.* at 13. After the adjudication hearing, Matthew's mother Debbie Fair assumed custody of the child. *Id.* Despite her instructions, Hailey's attorney did not inform her of the decision or file an appeal. *Id.* MDCPS conducted no home studies and did not return Hailey's phone calls. *Id.*

In June 2022, Hailey was provided with the court orders and a copy of her case plan for the first time. *Id.* at 14. Hailey filed for a rehearing of the referee's orders on June 24, 2022, and filed a notice of appeal on July 21, 2022. *Id.* Hailey was instructed to appear back in the Youth Court for a September 21, 2022, rehearing of the referee's orders. *Id.*

On September 21, 2022, at Hailey's request, the Youth Court referee set a new hearing for October 4, 2022. *Id.* On October 3, Cherodrick Jeffries contacted Hailey and informed her the hearing had been continued to November 2, 2022, but no other party was told the hearing was continued. *Id.* When Hailey failed to appear on October 4, 2022, the hearing was dismissed. *Id.* It was not until November 2, 2022, that Hailey learned the hearing had not been continued. *Id.* On Hailey's motion, a new hearing was scheduled for December 6, 2022. *Id.* On that date, the Youth Court dismissed all pending motions without conducting the scheduled hearing. *Id.* at 15.

On January 4, 2023, Hailey filed a notice of appeal and a motion to proceed in forma pauperis with the Mississippi Supreme Court. *Id.* The Mississippi Supreme Court denied Hailey's in forma pauperis motion. *Id.* Unable to deposit the required costs, the Mississippi Supreme Court

Clerk dismissed Hailey's appeal on February 16, 2023. *Id.*

## IV
## Analysis

In urging dismissal, the MDCPS Defendants argue that (1) "[a]ny claims against [them] in their official capacity are due to be dismissed because they are immune from suit under the Eleventh Amendment and they not 'persons' under § 1983;" (2) the federal claims against them in their individual capacities should be dismissed because they are "either non-existent causes of action or are clearly barred by qualified immunity;" and (3) the state law claims against them in their individual capacities "should be dismissed under Fed. R. Civ. P. 12(b)(6)." Doc. #96 at 6, 14–15, 19. Hailey responds that (1) sovereign immunity does not apply to her claims and even if it does, multiple exceptions to sovereign immunity apply; (2) her claims are plausible on their face; and (3) the MDCPS Defendants are not entitled to qualified immunity. Doc. #101 at 3, 12, 15, 17, 18. In reply, the MDCPS Defendants reiterate that sovereign immunity protects them from this suit, and Hailey has not overcome qualified immunity. Doc. #104 at 1, 4.

### A. Federal Official Capacity Claims

#### 1. Eleventh Amendment sovereign immunity

Arguing that "Congress did not abrogate Eleventh Amendment immunity in enacting § 1983," "[n]or has Mississippi waived its right to sovereign immunity," the MDCPS Defendants submit that "MDCPS is a state agency entitled to immunity" and such immunity also extends to state officials sued in their official capacities 'because such a suit is actually one against the state itself.'" Doc. #96 at 6–7 (quoting *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *3 (5th Cir. Feb. 6, 2001)). Noting that "Mississippi has recently dissolved the Child and Family Services Department and in its place, a separate sub-agency was created: the

Mississippi Department of Child Protection Services,"[9] Hailey posits that MDCPS bears the burden of demonstrating it is an arm of the state entitled to Eleventh Amendment immunity according to the six-factor balancing test in *Clark v. Tarrant County*, 798 F.2d 736, 744–45 (5th Cir. 1986); and considering those factors, MDCPS should not be deemed an arm of the state. Doc. #101 at 3–4, 11. The MDCPS Defendants reply that this Court has found MDCPS is an arm of the state; contrary to Hailey's suggestion, "nothing about a state agency having local field offices and/or local branches converts a state agency (such as MDCPS), into a local governmental entity to which Eleventh Amendment immunity does not apply;" and the statute creating the local offices of MDCPS "is crystal clear that the local offices are part of MDCPS." Doc. #104 at PageID 1035 (citing *Smith v. Miss. Dep't of Child Prot. Servs.*, No. 4:18-cv-165, 2019 WL 4418802, at *6 (N.D. Miss. Sept. 16, 2019)).

The "entity asserting sovereign immunity bears the burden of demonstrating it is an 'arm of the state.'" *Bonin v. Sabine River Auth.*, 65 F.4th 249, 253 (5th Cir. 2023).[10] Such inquiry is one of federal, not state, law. *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 690 n.4 (5th Cir. 2002). The United States Supreme Court instructs that courts must not rely on the parties' characterization but instead determine if the remedy sought is truly against the sovereign. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017).

---

[9] Hailey is correct that Marshall County Department of Child and Family Services ("MDCFS") was dissolved and replaced with MDCPS. In 2016, the Mississippi Legislature enacted the law which created MDCPS and permitted MDCPS to operate as a division of the Mississippi Department of Human Services ("MDHS") until early 2017. 2016 Miss. S.B. 2179 (Miss. Code Ann. § 43-26-1 eff. May 13, 2016). Under S.B. 2179, the transition period to phase out MDCFS and phase in MDCPS would last until July 1, 2018. *Id.* A few months before the end of that period, the Mississippi Legislature passed S.B. 2675 (Miss. Code Ann. § 43-26-1 eff. April 13, 2018), which made MDCPS an independent sub-agency of MDHS. No significant amendments were passed on the subject until July 1, 2023, when 2023 H.B. 1149 was enacted, the current form of Miss. Code Ann. § 43-26-1, which extended the powers and services MDCPS would possess and provide. H.B. 1149 also included Miss. Code Ann. § 43-26-11, which created the local offices of MDCPS but left their establishment and appointment to the commissioner's discretion.

[10] Because of the dissolution of MDCFS, MDCPS's participation in the filing of the present motion to dismiss, and Hailey's arguments focusing on MDCPS and not the Marshall County local branch, the Court will analyze whether MDCPS is an arm of the state and not whether the local branch of MDCPS in Marshall County is an arm of the state.

The Fifth Circuit considers six factors to determine whether an entity is an arm of the state: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property." *Bonin*, 65 F.4th at 254 (quoting *Vogt*, 294 F.3d at 689). A party need not satisfy all the *Clark* factors to benefit from sovereign immunity and the factors are not necessarily weighed equally. *Hudson v. City of New Orleans*, 174 F.3d 677, 681-82 (5th Cir. 1999).

Earlier this year, United States Senior District Judge Glen H. Davidson concluded that "statutory authority and … court rulings … make clear that … MDCPS … [is an] arm of the State and thus entitled to Eleventh Amendment immunity." *Perry v. Miss. Dep't of Child Prot. Servs.*, No. 1:24-CV-86, 2025 WL 818288, at *3 (N.D. Miss. Mar. 14, 2025); *see Smith v. Miss. Dep't of Child Prot. Servs.*, No. 4:18-CV-165, 2019 WL 4418802, at *6 (N.D. Miss. Sept. 16, 2019) ("[MDCPS], as an arm of the State of Mississippi, enjoys sovereign immunity unless an exception applies."). However, because Hailey is correct that the Court has not conducted a full *Clark* analysis "since the emergence of MDCPS as an independent entity," Doc. #101 at 3, the Court will briefly do so here.

### a. State Law Characterization

MDCPS is responsible for developing and executing child welfare services and accomplishes its responsibilities through local offices. Miss. Code Ann. §§ 43-26-1, 43-26-11. The commissioner appoints the heads of the local offices, who serve at the commissioner's pleasure. Miss. Code Ann. § 43-26-1. In defining the "State" for purposes of immunity under the Mississippi Tort Claims Act ("MTCA"), Mississippi law includes any "office, department, agency,

division, [and] bureau" in the definition of "State." Miss. Code Ann. § 11-46-1. So, Mississippi law treats MDCPS as an arm of the state and its local offices as non-autonomous divisions within MDCPS, not as a local or county entity.[11] This factor favors immunity.

### b. Source of Funds

The Court "must consider whether use of the entity's funds 'to pay a damage award against it would interfere with the fiscal autonomy and political sovereignty of [the State].'" *Matter of Entrust Energy, Inc.*, 101 F.4th 369, 384 (5th Cir. 2024) (quoting *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 258 (5th Cir. 2020)). A two-part inquiry determines if state funding is at risk: (1) whether the state would be liable for a judgment against the defendant, and (2) whether the state is liable for the defendant's general debts and obligations. *Bonin*, 65 F.4th at 256.

### i. Liability for judgment

Hailey argues "'[a]ny judgment entered [against MDCPS] … would be paid through the Tort Claims Fund and excess liability insurance' … 'mean[ing] that any potential judgment would not burden the state treasury.'" Doc. #101 at 6. The MDCPS Defendants counter that any judgment rendered against non-autonomous divisions within the State Department of Human Resources would be paid with state funds."[12] Doc. #104 at 2–3 (quoting *C.A. v. Lowndes Cnty. Dep't of Family & Children Servs.*, 93 F. Supp. 2d 744, 748 (N.D. Miss. 2000)).

As the Supreme Court explained in *Regents of the University of California v. Doe*, "none of the reasoning in our opinions lends support to the notion that the presence or absence of a third party's undertaking to indemnify the agency should determine whether it is the kind of entity that

---

[11] Almost all of the statutory authorities Hailey cites to oppose this conclusion govern the county departments of *public welfare*, not MDCPS. *See* Doc. #101 at 5.

[12] In *C.A.*, Judge Davidson noted that "[t]he lone funding burden placed on the counties is the requirement to provide office space for the county departments of human services; any additional county funds are provided solely at the discretion of the county boards of supervisors." 93 F.2d at 748.

should be treated as an arm of the State" and would "convert the inquiry into a formalistic question of ultimate financial liability."[13]  519 U.S. 425, 431 (1997).  Accordingly, if MDCPS is covered under the MTCA's Tort Claim Fund, such indemnification would not be evidence under *Regents* that MDCPS is not an arm of the state since the state is self-insuring and must allocate funds from the treasury into the Tort Claim Fund.  To the contrary, MDCPS' coverage under the MTCA is evidence it is an arm of the state.[14]  So, this part of the second *Clark* factor weighs in favor of immunity.

### ii.  Liability for debts and obligations

The Fifth Circuit's approach to deciding when a state's treasury is at risk based on the entity's budget has been varied.[15]  Recently, the Fifth Circuit asked whether the use of state funds would "interfere with the fiscal autonomy and political sovereignty" of the state in deciding this part of the second factor.  *Entrust Energy, Inc.*, 101 F.4th at 384.  As the Fifth Circuit explained in *Entrust Energy,* the "key distinction … is not whether the state would be impacted by a judgment against the entity, but how."  101 F.4th at 385.

---

[13] The Fifth Circuit, in determining whether an entity is an arm of the state, has considered indemnification and liability insurance as weighing against a finding of sovereign immunity because such facts remove the possibility of a damages award coming from the state treasury.  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 597 (5th Cir. 2006); *Vogt*, 294 F.3d at 693; *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 328 (5th Cir. 2002); *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 180–81 (5th Cir. 2023); *Hopkins v. Wayside Sch.*, No. 23-50600, 2024 WL 3738478, at *7–8 (5th Cir. Aug. 9, 2024).

[14] Mississippi Code § 11-46-17 states a governmental entity's self-insurance plan "*may* also provide coverage for liabilities outside the provisions of this chapter, including, but not limited to, liabilities arising from Sections 1983 through 1987 of Title 42 of the United States Code."  Even if self-insurance influenced this factor, neither party has shown whether MDCPS' MTCA plan covers § 1983 liability.

[15] It sometimes has focused on the state's funding constituting "the lion's share" of the entity's budget.  *Vogt.*, 294 F.3d at 693; *Hopkins*, No. 23-50600, 2024 WL 3738478, at *7.  On other occasions, it has found the state's contribution of three-quarters to 72% of the budget does not weigh in favor of sovereign immunity.  *Springboards to Educ., Inc. v. McAllen*, 62 F.4th at 180; *Springboards to Educ., Inc. v. Mission Indep. Sch. Dist.*, No. 21-4337, 2023 WL 3094185, at *2 (5th Cir. Apr. 26, 2023).  In one case, the state and federal contributions to the entity's budget were approximately equal with the state contribution amounting to 23–26.5% of the total, which the Fifth Circuit found weighed in favor of sovereign immunity.  *United States ex rel. King v. Univ. of Tex. Health Science Ctr.-Hou.*, 544 F. App'x 490, 496–97 (5th Cir. 2013).

Here, based on the information Hailey submitted about MDCPS' funding, somewhere between one-half and one-quarter of MDCPS' budget comes from the State of Mississippi.[16] While Hailey highlights various provisions where the counties may contribute funds to MDCPS, the only mandatory cost incurred by the counties is for the "operation of the local office" and its "maintenance and repairs."[17] Miss. Code Ann. § 43-26-11. Because a judgment against MDCPS would affect the State's appropriation decisions but not the federal[18] or county funding MDCPS receives, the fiscal autonomy of the State of Mississippi is implicated by this suit. Consequently, this part of the second factor also weighs in favor of immunity, making the second factor weigh in favor of immunity without question.

### c. *Degree of Local Autonomy*

The Fifth Circuit instructs that this factor focuses on "the 'extent of the entity's independent management authority' as well as the 'independence of the individual commissioners' who govern the entity." *Vogt.*, 294 F.3d at 694 (quoting *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 442 (5th Cir. 1985)). MDCPS's commissioner exerts considerable control

---

[16] In her response, Hailey relies on a survey of state funding which details MDCPS's funding sources from 2020, and MDCPS's 2022 Annual Service Progress Report. Doc #101 at 7–8.

[17] The Fifth Circuit has rejected considering a state's "voluntary, after-the-fact payment" of a judgment to count as a liability against the state. *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 321 (5th Cir. 2001). If voluntary, non-obligatory payments are irrelevant on this issue when they come from the state, it follows those from the county are equally irrelevant.

[18] According to the study Hailey cites, the three categories of federal funding for MDCPS in 2020 were Title IV-E under the Social Security Act (funding for foster care, adoption, guardianship, etc.), Title IV-B under the Social Security Act (funding for other child welfare services), and Temporary Assistance for Needy Families ("TANF") (funding for children and youth services programs, work and education activities, and supportive services). Kristina Rosinsky, et al., *Child Welfare Agency Spending in Mississippi in SFY 2020*, CHILD TRENDS (May 2023), https://cms.childtrends.org/wp-content/uploads/2023/05/Mississippi_SFY2020CWFS_ChildTrends_May2023.pdf. A judgment against MDCPS would not affect Mississippi's eligibility to receive funding from these sources. *See* 42 U.S.C. § 671 (Title IV-E) ("In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary"); 42 U.S.C. § 623 (Title IV-B) ("for each fiscal year, the sum appropriated pursuant to section 425 remaining after applying section 428(a) shall be allotted by the Secretary for use by cooperating State public welfare agencies which have plans developed jointly by the State agency and the Secretary"); 42 U.S.C. § 602 (TANF) ("the term 'eligible State' means, with respect to a fiscal year, a State that … has submitted to the Secretary a plan that the Secretary has found includes the following").

over the agency and its local offices. *See, e.g. Perez*, 307 F.3d at 330 ("The Commissioner has broad authority to 'decide any matter concerning the operation or administration' of the Centers;" "The Commissioner sets operation and performance standards for each Center;" "The Centers' relative lack of autonomy counsels in favor of Eleventh Amendment protection."). This factor weighs in favor of immunity.

### d. Concern with Local Problems

This factor centers on "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants." *Bonin*, 65 F.4th at 258 (quoting *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 347 (5th Cir. 1998)) (internal quotation marks omitted). In the statute enacting MDCPS, MDCPS charges the department with developing, executing, and providing protective services for children as authorized by Mississippi law. Miss. Code Ann. § 43-26-1(2)–(7). The local offices are the means of achieving this duty as determined by the commissioner. *Id.* § 43-26-11(1). While the local offices are geographically limited to serve their county, MDCPS's scope is not limited to benefit a geographic area or a group of local inhabitants within Mississippi. *See Perez*, 307 F.3d at 330–31 ("The Centers are accountable to the state Commissioner of Education, not to local voters. The Centers collect and deliver educational resources throughout the state, not just in one area; the Centers are simply divided into regions for convenience.") (internal citations omitted). Accordingly, this factor weighs in favor of immunity.

### e. Authority to Sue and be Sued

"The ability of an entity to sue and be sued apart from the state suggests that immunity is not appropriate." *Perez*, 307 F.3d at 331. MDCPS is explicitly authorizes to bring a civil action to recover sums it paid as a result of "any false statement, misrepresentation, concealment of a

14

material fact, failure to disclose assets, or by whatever means," as the amount due becomes a debt to MDCPS.  Miss. Code Ann. § 43-26-23.  Based on this, this factor weighs against immunity.

### f.   Right to Hold Property

If "the entity has the right to hold and use property," such "counsel[s] against Eleventh Amendment immunity."  *Hudson*, 174 F.3d at 691.  Under Mississippi Code § 43-26-1(d)(3), MDCPS's commissioner is granted the authority to enter and execute contracts, grants, and cooperative agreements with federal and state agencies, public and private institutions, or persons, which broadly suggests MDCPS may own property.  However, because the evidence as to whether MDCPS owns property apart from the State is limited, this factor is neutral in the analysis.

### g.  Weighing Factors

Factors one, two, three, and four weigh in favor of immunity; factor five weighs against immunity; and factor six is neutral.  On balance, the Court concludes that MDCPS is an arm of the state so the MDCPS Defendants are entitled to sovereign immunity.[19]

### 2.   Exceptions to sovereign immunity

The MDCPS Defendants contend that no exception to sovereign immunity applies to Hailey's claims against MDCPS and its employees.  Doc. #96 at 6.  Hailey responds that both the abrogation and *Ex parte Young* exceptions apply to her claims.  Doc. #101 at 12–17.

### a.  Congressional Abrogation

The MDCPS Defendants argue "Congress did not abrogate Eleventh Amendment immunity when enacting § 1983," Doc. #96 at 6 (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)), and Mississippi has not waived its right to sovereign immunity," *id.* (citing Miss. Code

---

[19] Hailey's complaint includes a "42 U.S.C. §1983 Monell Liability" claim.  Doc. #1 at 33–35.  Because the Court concludes that MDCPS is an arm of the state and not a municipality, such claim will be dismissed for failure to state a claim.

Ann. § 11-46-5(4)).  Hailey responds that she has shown "a clear violation of Title II of the ADA," reasoning:

> Congress has abrogated a state[']s right to sovereign immunity if a state acts in violation of Title II of the ADA. While [she] does not suffer from a disability, she was regarded as if she had a drug addiction that substantially affected her daily activities by the [MDCPS] Defendants, who then discriminated against her based on this false assumption.

Doc. #101 at 12, 14.  The MDCPS Defendants reply that the Title II matter is not before the Court because there is no allegation of a Title II violation in Hailey's complaint, and Hailey cannot make out a prima facie case of discrimination under the ADA because she "admits in no uncertain terms that she 'does not suffer from a disability.'"  Doc. #104 at 3 (citing *Leal v. Univ. of S. Miss.*, 296 So. 3d 660, 664 (Miss. 2020)).

Congress has abrogated sovereign immunity for violations of Title II, *United States v. Georgia*, 546 U.S. 151, 159 (2006), but Hailey has not shown such a violation occurred.  As the MDCPS Defendants point out, Hailey does not allege a Title II violation in her complaint.  *See generally* Doc. #1.  Even if she had, she fails to demonstrate a prima facie case of discrimination under the ADA through government services because she admits she does not have a qualifying disability and she does not allege any State defendant thought she was addicted to drugs because of her charge of possession of drug paraphernalia.[20]  *See Smith v. Harris Cty.*, 956 F.3d 311, 317 (5th Cir. 2020) (prima facie case requires plaintiff to be qualified individual under ADA).  The abrogation exception to Eleventh Amendment sovereign immunity does not apply here.

### b. *Ex parte Young*

The MDCPS Defendants argue Hailey's claims do not meet the *Ex parte Young* exception

---

[20] "Generally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint."  *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015).  Since the Court finds Hailey's Title II claim futile, leave to amend is unnecessary.  *See id.* (refusing to remand case to consider amendment because amendment would be futile).

as "[t]he complaint lodges claims based on retrospective acts, rather than prospective relief." Doc. #96 at 8. In response, Hailey states her requested relief meets *Ex parte Young* for the "deprivation of her fundamental liberty interest from [MDCPS's] forced removal of the minor child from her custody using 'voluntary' participation in a safety plan that she did not 'voluntarily' agree to" is an ongoing injury, and "asks this Court to stop them from unconstitutional practices to remove children without providing parents with due process." Doc. #101 at 16. The MDCPS Defendants reply that Hailey's "request for anything possibly prospective is not related to any violation of federal law" and "the relief sought by [Hailey] is by definition retrospective in nature and barred by the Eleventh Amendment;" Doc. #104 at 4 (citing *Jones v. Tyson Foods, Inc.*, 2013 WL 5781472, at *2 (N.D. Miss. Oct. 25, 2013)); "when seeking prospective relief as required to overcome the Eleventh Amendment, a plaintiff must establish a real and immediate threat that he will suffer a concrete injury, not speculation or conjecture," *id.* (citing *Texas v. United States*, 523 U.S. 296, 300 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563–64 n.2 (1992); *Los Angeles v. Lyons*, 461 U.S. 95, 102–08 (1983)); and Hailey "does not allege a real and immediate threat and concedes that she 'wants to ensure that she nor any other parent, and especially other children, do not suffer the same fate at the hands of a government entity,'" *id.* (citing Doc. #101 at 16–17).

While Hailey alleges ongoing constitutional violations and requests for injunctive and declaratory relief under the *Ex parte Young* exception, she fails to show the necessary standing for such relief. *See Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief."). Hailey seeks injunctive relief to prohibit the MDCPS Defendants from "further interference with the Taylors

17

familial relationships and harassment" and for MDCPS to "stop utilizing safety plans created with only one parent against the parents of Mississippi," and a declaration that "safety plans are voluntary mechanisms and cannot be forced upon a parent to deprive them of custody of their child without consent." Doc. #1 at 40–41. But she does not allege a continuing threat of interference with her family relationships by the MDCPS Defendants anywhere in the complaint, only interference that has already happened. *See Stringer v. Whitley*, 942 F.3d 715, 720–21 (5th Cir. 2019) ("[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury."). More, she grounds her injunctive relief against the MDCPS Defendants' use of safety plans in the potential use of such plans against the "parents of Mississippi." *See Parr v. Cougle*, 127 F.4th 967, 975–76 (5th Cir. 2025) ("'[R]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)); *Stringer*, 942 F.3d at 720 ("To be an injury in fact, a threatened future injury must be … potentially suffered by the plaintiff, not someone else"). And issuing a declaration that safety plans cannot be instituted without a parent's consent will not redress any forward-looking injury Hailey claims. *See Broadstar Wind Sys. Grp. Ltd. Liab. Co. v. Stephens*, 459 F. App'x 351, 356 (5th Cir. 2012) (standing to seek declaratory judgment is subject to redressability requirements); *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (declaratory relief cannot be issued unless plaintiff shows a substantial likelihood of future injury, even if declaratory relief is sought for past wrongs).[21] Despite the form of Hailey's claims satisfying *Ex parte Young*'s exception to sovereign immunity, the substance of her requested prospective relief fails to meet the requirements of Article III standing. For this reason, all Hailey's federal official capacity claims are subject to sovereign

---

[21] This also means Hailey's request for declaratory relief on any claim against the MDCPS Defendants in their individual capacity must be denied.

immunity.

### 3. Summary

Because the Court concludes that MDCPS is an arm of the state entitled to sovereign immunity and no exception to sovereign immunity applies, the federal claims against MDCPS and all federal official capacity claims against the MDCPS Defendants are dismissed.

### B. Federal Individual Capacity Claims

The MDCPS Defendants contend all Hailey's federal individual capacity claims "are either non-existent causes of action or are clearly barred by qualified immunity. There is no demonstration that they have violated clearly established laws, and [Hailey] cites no specific authority that places constitutional questions confronted beyond debate." Doc. #96 at 14–15. Hailey argues none of the MDCPS Defendants are entitled to qualified immunity as the removal of "a child from their home and searching a private residence are two such actions that have been clearly established [as fundamental liberties], if either action is taken without first obtaining consent or a warrant, and without exigent circumstances." Doc. #101 at 19. In reply, the MDCPS Defendants maintain that Hailey's "minor child was not removed from parental custody," and assert exigent circumstances justified the search of Hailey's apartment and removal of her child. Doc. #104 at 4–5.

The defense of qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Since the defense is raised here in a Rule 12(b)(6) motion to dismiss, the Court must determine whether Hailey's pleadings would overcome the qualified immunity defense. *Backe v.*

*LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The MDCPS Defendants are entitled to qualified immunity unless Hailey shows (1) they violated her constitutional rights, and (2) their actions were objectively unreasonable in light of clearly established law. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007). Both steps of this analysis are questions of law, and the Court has flexibility to address either prong first. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).

There are two means of demonstrating the right allegedly violated was "clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). The first requires the plaintiff to identify a case where an officer acting under similar circumstances was held to have violated the Constitution or a federal law. *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). The case chosen cannot define the law at a high level of generality, *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018); or through abstract statements but instead with specificity, *Cunningham v. Castloo*, 983 F.3d 185, 191–92 (5th Cir. 2020). The purpose of identifying an analogous case is to demonstrate a "fair warning" for reasonable officials to know the conduct at issue is definitively unlawful. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017).

The second method of demonstrating clearly established law is the rare possibility the challenged conduct's unlawfulness is clear enough that existing precedent is not needed for a reasonable official to realize its unlawfulness. *Joseph*, 981 F.3d at 330. Yet, this standard is "sky high" to meet. *Id.* at 337.

### 1. "42 U.S.C. § 1985 Conspiracy to Interfere with Civil Rights"

The MDCPS Defendants argue Hailey's allegations on this claim are "extremely vague and most are generally lodged against nine (9) defendants collectively, and do not implicate any right of [her];" and because "facts of the conspiracy [to interfere with civil rights] must be plead

with particularity," Hailey's allegations fail to state a plausible claim of relief under § 1985. Doc. #96 at 15. Hailey responds that her complaint clearly alleges the MDCPS Defendants conspired to deprive her of her rights under the First, Fourth, and Fourteenth Amendments, including her fundamental liberty interest in the custody of her child; "out of the twenty paragraphs dedicated to the conspiracy claim, only five are alleged against, 'all nine (9) defendants collectively;'" Count I is not "so vague that the [MDCPS] Defendants have not been put on notice as to what claims are a [sic] made against them;" and she was "specific when describing how Yielding deprived her of her 'right to custody of the minor child.'" Doc. #101 at 27–28 (footnote omitted).

Under subsection (3) of 42 U.S.C. § 1985, "a plaintiff must allege facts demonstrating "(1) a conspiracy; (2) with the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (per curiam)). Because the conspiracy must deprive someone of the "equal protection of the laws" or "equal privileges and immunities under the laws," "some form of class-based discrimination" must be shown.[22] *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019).

Hailey does not plead the conspiracy to deprive her of her rights was motivated in any way by her race or other class-based identity. Consequently, her § 1985 claim of conspiracy to interfere with civil rights fails to survive qualified immunity.

### 2. "42 U.S.C. §1983 … Unlawful Search and Seizure"

In her complaint, Hailey alleges Yielding's actions "constitute[d] an intrusion into [her]

---

[22] The Fifth Circuit has held "the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Cantu*, 933 F.3d at 419 (quoting *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)) (quotation marks omitted).

right to be free from an unlawful seizure of her person" and "violated [her] constitutional rights by searching her private residence without consent, probable cause, or exigent circumstances." Doc. #1 at 27–28. The MDCPS Defendants argue that "Yielding [was] on the scene as an MDCPS employee performing her job after being contacted by the arresting officer" and Yielding rendered services that MDCPS is required by law to provide under relevant Mississippi law. Doc. #96 at 16 (citing Miss. Code Ann. §§ 43-26-1, 43-21-353, 43-21-357). Hailey responds that "Fifth Circuit law had clearly established in June 2005 … that a warrantless seizure … absent any imminent danger was a constitutional violation;" "'[p]hysical entry of the home is the chief evil against which the … Fourth Amendment is directed;'" and "Yielding has failed to demonstrate how the performance of her duties correlates to her actions taken in violation of the Constitution" since "Yielding did not have a warrant to remove the minor child or access the building, she did not obtain consent from Hailey, and there were no emergent circumstances warranting her intrusion into a private residence."[23] Doc. #101 at 20, 23, 29. The MDCPS Defendants reply that "exigent circumstances certainly existed as the child's mother, [Hailey,] was arrested for possession of drug paraphernalia and resisting arrest while the child was in her care." Doc. #104 at 5.

### a. Search

Hailey alleges the clearly established right of freedom from unreasonable searches of one's residence which no reasonable person would believe could be deprived without consent, a warrant, or exigent circumstances.[24] *See Groh v. Ramirez*, 540 U.S. 551, 559 (2004) ("[It is a] basic

---

[23] Based on the factors for determining exigent circumstances from *Wernecke v. Garcia*, 591 F.3d 386, 397–98 (5th Cir. 2009), Hailey argues Yielding should have had little issue obtaining an emergency custody order; MDCPS had little reason to worry about her fleeing as she was in custody; her child could have been placed with her mother which would have been a less extreme solution to removing the child from her custody; placing her child with Matthew effectively placed him with "virtual strangers" and would cause harm to the child; there was no threat of danger facing the child; there was no evidence of danger to support removal; and her stepmother was available to supervise while she was in custody. Doc. #101 at 21–22.

[24] The Supreme Court has held "overnight guests" to one's home may claim Fourth Amendment protections. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). Hailey alleges she was in the apartment of her father's restaurant the

principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.") (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Yielding is not entitled to qualified immunity as to the search conducted after Hailey's arrest.[25] The only question then is whether Hailey's allegations, if true, would constitute a Fourth Amendment violation by Yielding.

Notably, the MDCPS Defendants do not dispute a search occurred but rather contend exigent circumstances existed. But the record does not support, and the MDCPS Defendants do not attempt to demonstrate, that Hailey's child was in immediate danger. *See Wernecke*, 591 F.3d at 399 (no exigent circumstances existed because "[t]he presence of medications and syringes in the home" and "mere clutter in the home" would not lead "a reasonable person" to "believe that an immediate danger would be posed."). Regardless, that Hailey's arrest caused the need for an investigation into potential neglect does not justify discarding the protections of the Fourth Amendment.

*b. Seizure*

In *Gates v. Texas Department of Protective & Regulatory Services*, the Fifth Circuit made clear that the Fourth Amendment applies to the removal of children from their homes. 537 F.3d 404, 427 (5th Cir. 2008). In *Wernecke*, the Fifth Circuit clarified the factors to consider for alleged neglect cases—including the time to obtain a court order, the risk the parent may flee with the

---

night before her arrest to take her child to school since her mother was out of town. Doc. #1 at 7. Because she at least qualifies as an "overnight guest" of her father's apartment, she was entitled to Fourth Amendment protections.

[25] The MDCPS Defendants' reliance on Mississippi statutes does not strengthen their qualified immunity defense, or override or excuse Fourth Amendment requirements. *See, e.g., Gates*, 537 F.3d at 422 ("Regardless of what Texas law may authorize, entry into a house by the individual defendants must satisfy Fourth Amendment standards."). Mississippi Code § 43-21-357 governs the Youth Court's intake procedures, and neither expressly nor implicitly authorizes searches of private residences during the course of MDCPS's investigations. Likewise, § 43-26-1 creates MDCPS and outlines its powers but does not direct MDCPS employees to enter and search private residences without a warrant, order, or consent. Finally, § 43-21-353 does impose a duty to report on law enforcement individuals, the statute does not address actions taken beyond reporting suspected abuse and neglect of minors.

child, the possibility of less extreme solutions, and the harm to the child from removal.[26]  591 F.3d at 398.

Here, there was no threat Hailey would flee with her child as she was in custody by the time Yielding arrived on the scene.  And less extreme solutions for ensuring care for Hailey's child existed before removal of her parental rights.  The complaint alleges Hailey told Yielding that her stepmother had already been informed of the situation, and Yielding was given contact information for Hailey's mother (who was out of town) along with the information of a close family friend down the street.  Doc. #1 at 10.  Any of these individuals reasonably could have provided Hailey's child a place to stay while Hailey's criminal proceedings were pending before the decision was made to transfer custodial rights of the child to Matthew—particularly since the complaint alleges Matthew lost his custodial rights and was under a restraining order preventing him from being within 500 feet of the child.[27]

Nor was there anything indicating Hailey's child faced imminent danger by staying at Hailey's mother's house.  *See Wernecke*, 591 F.3d at 397 ("*Gates* defined 'exigent circumstances' to mean … 'there is reasonable cause to believe that the child is in imminent danger of physical or sexual abuse if he remains in his home.'") (quoting *Gates*, 537 F.3d at 429).  Indeed, Hailey alleges she informed Yielding that giving custody to Matthew presented the potential harm of domestic abuse.  Doc. #1 at 10.  Given all this, exigent circumstances did not exist to justify the removal of Hailey's child without a warrant or Hailey's consent.  Consequently, Yielding is not entitled to qualified immunity on Hailey's unreasonable seizure claim.

Because a reasonable person would understand Yielding's actions violated clearly

---

[26] *Wernecke* also lists as factors the nature of the abuse, and the strength of the evidence supporting the allegations of abuse.  591 F.3d at 398.

[27] Doc. #1 at 6.

established law, the allegations of Hailey's complaint overcome Yielding's qualified immunity defense as to the unlawful search and seizure claims. So, the motion to dismiss is denied in that respect.

### 3. "Violation of 42 U.S.C. §1983 1st Amendment"

Regarding this claim, Hailey alleges that when she "refused to give custody of her children to Matthew," Yielding, Dillard, and MDCPS undertook retaliatory action and conspired with other officials to harm her. Doc. #1 at 29. The MDCPS Defendants argue only that "it is unclear what constitutional right Yielding and Dillard allegedly violated and how." Doc. #96 at 16. Because Hailey does not attempt to defend this claim in her response,[28] the Court deems this claim abandoned and will be dismissed. *See United States v. Martinez*, 131 F.4th 294, 316 (5th Cir. 2025) ("However, 'a party who inadequately briefs an issue is considered to have abandoned the claim.'") (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)); *see also Estate of Pernell v. City of Columbus*, No. 1:08-cv-40, 2010 WL 1737639, at *3 (N.D. Miss. Apr. 27, 2010) ("[P]laintiffs waived claims for which they made no argument in their response.") (citing *Dubose v. Oustalet*, 738 F. Supp. 188, 189 n. 1 (S.D. Miss. 1990)).

### 4. "42 U.S.C. § 1983 Fourteenth Amendment - Abuse of Power/Process"

For this claim, Hailey alleges Yielding, Dillard, and Jeffries "have all abused and misused their positions as elected officials to intimidate and harass [her]." Doc. #1 at 31. In the motion to dismiss, the MDCPS Defendants argue it is unclear how they did so. Doc. #96 at 16. In response, Hailey "point[s] the [MDCPS] Defendants to [paragraph 82 of the Complaint, which] incorporates all of the preceding paragraphs into the claim," and argues that "[t]here are more than enough facts alleged in [her] complaint for the [MDCPS] Defendants to figure out how they abused their

---

[28] Hailey merely states, "Once again, the facts have been incorporated." Doc. #101 at 30.

power." Doc. #101 at 30. Hailey does not attempt to explain which actions of the MDCPS Defendants are an abuse of power or what right they violated but instead relies on the entirety of her factual allegations. While the Court must construe the alleged facts in the light most favorable to Hailey, the Court declines to conjure arguments from the non-existent allegations. Accordingly, no violation of Hailey's constitutional rights is alleged as to this claim such that qualified immunity applies.

### 5. "Right to Familial Association" and Procedural and Substantive Due Process

Hailey claims a violation of her right to familial association because the MDCPS Defendants "have utilized their power and authority as government officials to unlawfully interfere with [her] relationship with her child and otherwise harass [her]," such that "[she] has been separated from her child and forced to fight to regain custody." Doc. #1 at 31–32. Regarding procedural due process, her complaint alleges that she "had a Constitutional right to a hearing" when her "fundamental liberty interest in [the] care, custody, and control of her minor child [was] infringed upon;" her right to custody of her child was deprived absent judicial authorization or threat to the child's safety; the legal processes she was given was "lacking in all legal basis;" she was not afforded "a hearing within the statutorily required time" or provided "any other meaningful opportunity to be heard concerning the removal of her minor child from her custody;" and "[a]ny reasonable person would have known that such actions were in violation of [her] Constitutional rights." *Id.* at 37–38 (citing *Wooley v. City of Baton Rouge*, 211 F.3d 913 (5th Cir. 2000)). As to substantive due process, Hailey alleges the MDCPS Defendants "deprived [her] of her right to familial integrity when they seized the minor child by transferring custody of the minor child without probable cause, exigent circumstance, or a court order;" and because "[g]overnment may not deprive individuals of fundamental rights unless the action is necessary and animated by

a compelling purpose" and the MDCPS Defendants acted "without any reasonable justification and not in the service of a legitimate governmental objective," her substantive due process rights were violated. *Id.* at 39 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

The MDCPS Defendants argue that "[t]here is only a vague allegation that '[a]ll Defendants have utilized their power and authority as government officials to unlawfully interfere with [Hailey's] relationship with her child and otherwise harass [Hailey],'" leaving it "unclear what constitutional right Yielding, Dillard, and Jeffries … allegedly violated and how;" "it is unclear … what Yielding, Dillard, or Jeffries allegedly did … other than presumably instituting a safety plan for the care of [Hailey's] minor child at the time [Hailey] was arrested;" and "[n]o specific actions of Yielding, Dillard, or Jeffries are alleged … only vague characterizations to groups of defendants are made." Doc. #96 at 16–17.

In response, Hailey cites *Morris v. Dearborne* to show the right to family integrity is clearly established, which includes "rights to conceive and raise one's children." Doc. #101 at 23 (quoting 181 F.3d 657, 666–67 (5th Cir. 1999). She also cites *Gates*, *Marks v. Hudson*, and *Banks v. Herbrich* to show it is clearly established the government "may neither permanently terminate parental rights, nor temporarily remove children from their parents, without affording the parents due process of law," which requires "consent, a court order, or exigent circumstances." Doc. #101 at 19–20 (citing *Gates*, 537 F.3d at 438; *Marks*, 933 F.3d 481, 486 (5th Cir. 2019); *Banks*, 90 F.4th 407, 413 (5th Cir. 2024)). Hailey contends exigent circumstances exist when "based on the totality of the circumstances, there is reasonable cause to believe that the child is in imminent danger of physical or sexual abuse if he remains in his home;" and "it becomes exceedingly obvious that the [MDCPS Defendants] did not have extenuating circumstances for removal." *Id.* at 21–23 (quoting *Gates*, 537 F.3d at 429). Hailey acknowledges the right to family integrity "is not absolute" but

27

maintains "some procedural due process must be provided before parents are deprived of their liberty interest in the custody and management of their child." *Id.* at 23. According to Hailey, "she made it clear what the [MDCPS] Defendants did" because "she state[d] [in the complaint they] 'provided constitutionally insufficient procedures while depriving [her] of her rights,'" including her right "to be heard concerning the removal of the minor child from her custody." *Id.* at 31.

The MDCPS Defendants reply that "Yielding instituted a safety plan for the care of [Hailey's] minor child at the time [she] was arrested" which "included the other parent of the child; "*Banks* … related to the removal of a child from the child's home by the Texas Dept. of Family and Protective Services" but here "the minor child was not removed from parental custody – the safety plan for the minor child included the child's father;" and "exigent circumstances certainly existed as the child's mother … was arrested for possession of drug paraphernalia and resisting arrest while the child was in her care." Doc. #104 at 4–5.

Though it is unclear whether Hailey alleges a procedural or substantive due process claim under the right to familial association or family integrity, both rights are clearly established. In *Romero v. Brown*, the Fifth Circuit found the Due Process Clause protects a parent's right to both the fundamental liberty interest in the custody and care of their children as well as requires a state to follow certain procedures before encroaching on such right, holding "a child cannot be removed 'without a court order or exigent circumstances,'" the same standard which governs Fourth Amendment claims of child removal. 937 F.3d at 519, 521 (quoting *Gates*, 537 F.3d at 434). Because this Court concluded Hailey overcame the qualified immunity defense as to her Fourth Amendment claims, then her family integrity claim under the Fourteenth Amendment Due Process Clause would succeed for the same reasons based on the same test.

In contrast, the substantive due process determination requires a balancing test between the state's interests in protecting the health, safety, and welfare of children and the right of the family to remain free of coercive interference of the state. *Id.* at 520. Because a "balancing test is difficult terrain for a party having to prove a clear violation of law," *Romero* requires a case-by-case determination of whether the interests are evenly balanced or "overlap"—suggesting the right is too "nebulous" to be clearly established—or is "squarely on the end of the continuum" where one interest is well-developed or negligible. *Id. Romero* noted that the Fifth Circuit has never found a clearly established violation of the substantive due process right to family integrity by a child welfare worker[29] but acknowledged the Fifth Circuit has found clear violations of substantive due process when the state attempted to permanently sever the parent-child relationship, or the removal was measured in months or years. *Id.* at 521 (citing *Morris*, 181 F.3d at 671).

Here, Hailey alleges facts sufficiently distinguishable from the Fifth Circuit's prior cases which demonstrate the right to family integrity was clearly established. These facts indicate Mississippi's interest in protecting Hailey's child was negligible and based on an allegation Hailey had drugs in the building with her child. But the infringement based on that interest—the transfer of custody of Hailey's child without her consent, court order, or imminent danger to the child— was disproportionate and a serious encroachment. *See Romero*, 937 F.3d at 521 ("Although the state's taking children for any amount of time is a serious encroachment … the one-day removal of Romero's children is a much less substantial interference with the right to control a child's

---

[29] *Romero* cited *Kiser v. Garrett*, 67 F.3d 1166, 1173 (5th Cir. 1995), and *Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988), for this proposition. 937 F.3d at 520. *Kiser*, *Hodorowski*, and even *Romero* all addressed alleged abuse or violence towards the removed children, not alleged neglect. *Kiser*, 67 F.3d at 1173; *Hodorowski*, 844 F.2d at 1217; *Romero*, 937 F.3d at 521. However, *Romero* and its cited authorities all recognized the short-term or temporary removals at issue presented weaker claims of clearly established law compared to the state's attempt to effectuate prolonged or permanent separation of children from their parents. *Kiser*, 67 F.3d at 1171; *Hodorowski*, 844 F.2d at 1217; *Romero*, 937 F.3d at 521.

upbringing than these far lengthier removals.").  Indeed, half a decade has passed since custody was first transferred from Hailey.  Both the clear imbalance in the relative interests colliding and the "fair warning" from prior Fifth Circuit cases strongly suggest the right to family integrity was clearly established under these circumstances.[30]  *See Morris*, 181 F.3d at 671 (removing child for three years "does not fall within the exception, or even close to the line, that allows a state to temporarily remove a child from her home for a few days or a few months to protect her while an investigation of reported child abuse is conducted."); *see also Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) ("The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights'") (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013)).

Having found Hailey alleged clearly established rights, the Court also finds she adequately alleges facts which, if true, would show a constitutional violation occurred for all her Fourteenth Amendment claims.  The MDCPS Defendants do not address the alleged "insufficient procedures" Hailey raises in her complaint under her procedural due process claim—that she was prevented from speaking, contesting jurisdiction, cross-examining witnesses, or presenting evidence at the November 10, 2020, safety plan review hearing—which raise basic due process concerns.  Doc. #1 at 12, 37; *see Lion Elastomers, L.L.C. v. NLRB*, 108 F.4th 252, 260 (5th Cir. 2024) ("[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  In addition, all Hailey's motions for relief regarding the rehearing on Liddy's order were dismissed on December

---

[30] Because Hailey grounds the moment of transfer at the safety plan's execution on October 16, 2020, and not October 19 when Liddy approved the safety plan or November 10 at the safety plan review hearing, or at any other date, there was no court order in effect ordering the challenged transfer of custody.

6, 2022, "without conducting the scheduled hearings in the matter"—another instance where Hailey was deprived of an opportunity to object or present evidence against the transfer of custody of her child—which receives no attention in the MDCPS Defendants' motion or reply.  Doc. #1 at 15.  No reasonable person would understand such conduct to be permissible under the guarantees of procedural due process.

As to Hailey's substantive due process claim, the MDCPS Defendants argue Hailey's substantive due process rights were not violated because "the minor child was not removed from parental custody" since "the safety plan … included the child's father."  Doc # 104 at 5.  However, substantive due process rights to parental custody and familial association are not enjoyed in a collective manner by both parents but are individual rights each parent possesses.  *See Wooley*, 211 F.3d at 920–21 ("That the Constitution protects family relationships and *a* parent's right to the care, custody, control, and management of their children is well-established") (emphasis added).  Hailey has independent and distinct parental rights from Matthew and, according to the complaint, such rights were infringed.

The MDCPS Defendants also argue that Hailey's substantive due process rights were not violated because exigent circumstances existed at the time that the minor child was removed from Hailey's custody, pointing to Hailey's arrest for drug paraphernalia and resisting arrest as satisfying exigency.  Doc. #104 at 5.  "While drug use … in the home is unquestionably concerning," *Banks*, 90 F.4th at 414, this would not lead a reasonable person to believe that, at the time the safety plan was executed, Hailey's child faced immediate danger.  Less extreme solutions were available, including letting the child stay with family members or friends, rather than Matthew.  Based on the complaint, the Court does not find the child was in immediate danger requiring a warrantless removal against Hailey's consent.

31

For these reasons, the MDCPS Defendants are not entitled to qualified immunity on any of Hailey's Fourteenth Amendment Due Process claims.

### 6. "Fraud Upon the Court" and "Fabrication/Misrepresentation of Evidence"

Hailey alleges in her complaint the MDCPS Defendants "committed fraud upon the court when [they] represented the minor child to be an in-home services case and not to have removed the child from [her] custody … , despite the Department forcibly transferring custody of the minor child," which actions "show a deliberate and purposeful intent to fraudulently deny [her] of her rights" and "infected every single decision made during the proceedings before the Youth Court, making it so material that it was a determinative element in the outcome of the proceedings" and causing Hailey to be "incarcerated, prosecuted, and deprived of custody of her child for years." Doc. #1 at 24, 25, 32 (cleaned up).

The MDCPS Defendants argue that "'Fraud on the Court' is not a cause of action" but a "procedural rule that allows a party to request that a judgment be set aside" which renders such "a baseless claim." Doc. #96 at 15 (citing Fed. R. Civ. P. 60(d)(3)). With respect to Hailey's fabrication/misrepresentation of evidence claim, they submit that it is "unclear what constitutional right Yielding, Dillard, or Jeffries allegedly violated and how." Doc. #96 at 15, 17 (citing Fed. R. Civ. P. 60(d)(3)). Hailey responds that even if she did not use the "correct term" for her cause of action, "it is clearly established that any false statements presented to the Youth Court in order to separate a parent and child is a violation of rights." Doc. #101 at 28. Citing *Wernecke* and *Marks*, Hailey contends "the Fifth Circuit has clearly established that social workers can violate the Fourth Amendment by 'knowingly and intentionally, or with reckless disregard for the truth, making a false statement or omission that results in the issuance of a warrant without probable cause.'" Doc. #101 at 23–24. (citing *Wernecke*, 452 F. App'x at 483; *Marks*, 933 F.3d at 486).

Hailey has not shown that MDCPS's false representation violates clearly established law. While *Marks* and *Wernecke* address misrepresentations made to a court, they dealt with an omission resulting in a warrant authorizing the removal of a child.[31]   Hailey alleges the misrepresentations at issue occurred during the Youth Court proceedings after her child had already been removed from her custody which is a substantially different factual circumstance than that in *Marks* or *Wernecke*.  *See Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (clearly established law "must be 'particularized' to facts of case.") (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Nor has Hailey alleged a constitutional violation occurred.  She alleges both that Youth Court referee Liddy issued the safety plan which removed the minor child from her custody and that MDCPS falsely represented to the Youth Court the child was not removed from her custody. *Compare* Doc. #1 at 11–12 *with* Doc. #1 at 24–25.  The Court cannot accept the conclusory allegation that MDCPS knowingly lied to the Youth Court about the temporary removal of the child.  Rather, the complaint clearly alleges MDCPS and the Youth Court were fully aware the child was temporarily placed in the custody of Matthew and Fair during the pendency of the proceedings.  *Id.*  Hailey does not allege a false representation by the MDCPS Defendants.  So, the MDCPS Defendants are entitled to qualified immunity on the "Fraud Upon the Court" and "Fabrication/Misrepresentation of Evidence" claims.

---

[31] In *Wernecke*, the Texas Department of Family and Protective Services ("TDFPS") threatened to intervene if Edward and Michelle Wernecke did not schedule a radiation appointment for their daughter Katie, who twice had been recommended for radiation treatment for her Hodgkin's disease.  452 F. App'x at 481.  Linda Garcia, an official for TDFPS, sought a temporary custody order for Katie and in the supporting affidavit neglected to tell the court the Werneckes had sought a referral to an oncologist for the radiation treatment but were denied.  *Id.* at 481.  In *Marks*, TDFPS received a referral of physical abuse by Marks against one of her children.  933 F.3d at 484.  Wanda Hudson was assigned to the case and, after experiencing noncompliance from Marks, went to Marks' residence.  *Id.*  In an affidavit submitted to the state court seeking temporary removal of the children from Marks, Hudson attested to seeing someone in the residence but nobody answered the door.  *Id.*  Marks, however, claims Hudson lied and nobody was at home during Hudson's visit.  *Id.*

### 7.  Summary

Of the federal individual capacity claims, those alleging § 1985 Conspiracy, Fraud Upon the Court, First Amendment, Fourteenth Amendment Abuse of Power, and Fabrication/Misrepresentation of Evidence fail to overcome qualified immunity and will be dismissed.  Because Hailey has overcome the qualified immunity defense as to her claims for Fourth Amendment Unlawful Search and Seizure; and Fourteenth Amendment Right to Family Integrity, Procedural Due Process, and Substantive Due Process, the motion to dismiss is denied in that regard.

### C.  State Law Official Capacity Claims

The MDCPS Defendants assert sovereign immunity prevents Yielding, Dillard, and Jeffries from being sued in federal court absent a waiver by the State, citing *Corn v. Mississippi Department of Public Safety*, 954 F.3d 268, 275 (5th Cir. 2020), which held state officials cannot be sued in their official capacity in federal court for violations of state law.  Doc. #96 at 18.  Because Hailey does not address this argument, the claims against the MDCPS Defendants in their official capacities for violations of state law must be dismissed as abandoned.  *Martinez*, 131 F.4th at 316; *Estate of Pernell*, 2010 WL 1737639, at *3.

### D.  State Law Individual Capacity Claims

The MDCPS Defendants contend Hailey has not stated a claim upon which relief can be granted as to all state law individual capacity claims against Yielding, Dillard, and Jeffries.  Doc. #96 at 19.

#### a.  Trespass Claim Against Yielding

The MDCPS Defendants contend Hailey "is not the owner of the property upon which trespass is alleged" and Hailey was "a resident of Union County," meaning Hailey "does not have

standing to bring a trespass claim;" even if Hailey had standing to refuse Yielding's entrance into the apartment, she "did not inform Yielding that she was not allowed on the property;" and since "Mississippi law acknowledges the existence at common law of a number of privileges, including lawful arrest, that would allow MDCPS personnel entry onto the land of another without liability for trespass," the trespass claim should be dismissed. *Id.* at 21, 22 (citations omitted). They also submit that "it is not disputed that Yielding was there as an MDCPS employee performing her job after being contacted by the arresting officer," meaning she was "authorized and compelled by Mississippi law" to take the actions she did; "Yielding had full authority to be there in the course and scope of her employment … after receiving a report that a minor child's custodial parent was being taken into law enforcement custody[] and is thus not subject to a claim of trespass;" and, consequently, Hailey has "failed to state a claim against Yielding for trespass." *Id.* at 22.

In response, Hailey counters that she "does not accuse Yielding of trespass simply for arriving at the location of her arrest" but for "without a warrant or consent … enter[ing] the private residence areas of the building;" she is "not required to inform every stranger she meets that they cannot enter her childhood home, technically owned by her [f]ather who was not present or even a current resident;" and "[d]iscussing custody options with [her] in no way authorizes Yielding to enter a private residence." Doc. #101 at 33.

All claims for money damages arising out of the State's tortious acts must be brought under the MTCA. *Garretson v. Miss. Dep't of Transp.*, 156 So. 3d 241, 247 (Miss. 2014) (citing Miss. Code Ann. § 11-46-7). Such includes claims of trespass, which is an intentional tort. *Mansour v. Stock*, 271 So. 3d 620, 622 (Miss. Ct. App. 2018) (quoting *Gaw v. Seldon*, 85 So. 3d 312, 318 (Miss. Ct. App. 2012)). A plaintiff must submit notice of her claims under the MTCA at least ninety days prior to instituting suit. Miss. Code Ann. § 11-46-11.

Neither Hailey nor the MDCPS Defendants address whether Hailey complied with the pre-suit notice requirement. However, Mississippi courts have held the MTCA's notice requirement is jurisdictional. *Stuart v. Univ. of Miss. Med. Ctr.*, 21 So. 3d 544, 548 (Miss. 2009). Since Hailey's trespass claim against Yielding would lack subject-matter jurisdiction under Mississippi law, this Court must dismiss the trespass claim accordingly for failure to comply with the MTCA's mandatory pre-suit notice provision. *See, e.g., Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 552 (5th Cir. 2020) ("Although the parties do not address the issue, the Texas Labor Code's administrative-exhaustion requirement is substantive because … it is mandatory and, therefore, requires Texas courts to dismiss the Texas Labor Code claim where defendant shows it has not been satisfied."). Consequently, the trespass claim against Yielding will be dismissed.

### b. Civil Conspiracy Claim

The MDCPS Defendants contend Hailey "has presented no evidence other than a mere allegation of conspiracy," only stating that "'the evidence and facts ***tend*** to show that all of the Defendants conspired together' to harm" Hailey and therefore fails to plead "the existence of any agreement between any defendants to accomplish any unlawful purpose." Doc. #96 at 20 (bold and emphasis in original).

The Court considers Hailey's civil conspiracy claim abandoned since Hailey does not address it in her response. *See Terry Black's Barbecue, L.L.C. v. State Auto Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims"). The conspiracy claim will be dismissed.

### c. Intentional Infliction of Emotional Distress Claim

The MDCPS Defendants argue that to support the intentional infliction of emotional distress claims against Yielding, Dillard, and Jeffries, under Mississippi law, Hailey must prove

36

these defendants' actions "evoke outrage or revulsion in civilized society" but Hailey "has not alleged Yielding, Dillard, or Jeffries engaged in any outrageous conduct that meets the test for intentional infliction of emotion[al] distress." Doc. #96 at 19–20 (citing *Herbert v. Herbert*, 374 So. 3d 562, 570–71 (Miss. Ct. App. 2023). Like the conspiracy claim, this claim will be dismissed as abandoned because Hailey does not defend it in her response.

### c. Summary

The state law claims against the MDCPS Defendants in their individual capacities will be dismissed.

### V
### Conclusion

In accordance with the rulings detailed above, the MDCPS Defendants' motion to dismiss [95] is **GRANTED in Part and DENIED in Part**.

**SO ORDERED**, this 30th day of September, 2025.

<u>/s/Debra M. Brown</u>
**UNITED STATES DISTRICT JUDGE**