**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**HAILEY TAYLOR**                                                                 **PLAINTIFF**

**V.**                                                          **NO. 3:23-CV-401-DMB-RP**

**RICK PRECIADO, et al.**                                                **DEFENDANTS**

## OPINION AND ORDER

After she was arrested and lost custody of her minor child, Hailey Taylor sued Marshall County, Marshall County Department of Child and Family Services, some county officers and employees, and other individuals, alleging they conspired to deprive her of numerous constitutional rights, including the right to custody of her child. Marshall County, Rick Preciado, and Sarah Jean Liddy move to dismiss the claims against them, arguing this Court lacks jurisdiction, statute of limitations, and numerous immunities and procedural bars apply to Hailey's claims. Because the statute of limitations has expired, Preciado and Liddy are immune from suit, and Hailey failed to provide the County Defendants with the requisite Mississippi Tort Claims Act notice, the motion to dismiss will be granted.

## I
## Procedural History

On October 18, 2023, Hailey Taylor filed a pro se complaint in the United States District Court for the Northern District of Mississippi, naming as defendants Rick Preciado, Kaitlyn Yielding, Cherodrick Jeffries, Latrice Dillard, Sarah Jean Liddy, Amy Taylor, Kim Underwood, Tina Bennet, Matthew Taylor,[1] Marshall County, Marshall County Department of Child and

---

[1] Because Hailey Taylor, Amy Taylor, and Matthew Taylor have the same surname, they will be referenced by their first names to avoid confusion.

Family Services, and John Does 1-10.[2]  Doc. #1.[3]  In the complaint, Hailey asserts federal and state law claims based on allegations of "a conspiracy between state officials …, employees of a regional state agency, and a youth court referee … who sanctioned and actively participated in the furtherance of several private parties' plan to wrongfully deprive [her of] her civil rights," which, among other things, resulted in her arrest, a warrantless search, and her subsequent loss of custody of her minor child.  *Id.* at 4, 5–13.  Hailey seeks compensatory and punitive damages, and declaratory and injunctive relief, among other things.  *Id.* at 40–41.

On September 25, 2024, Marshall County, Preciado, and Liddy (collectively, "County Defendants") filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. #98.  Hailey responded in opposition on October 9, 2024.[4]  Doc. #102.  The County Defendants replied on October 16, 2024.[5]  Doc. #104.

## II
## Standard

A motion under Federal Rule of Civil Procedure 12(b)(1) asserts a lack of subject-matter jurisdiction.  In evaluating a Rule 12(b)(1) motion, a court may consider the complaint alone, undisputed facts in the record, and the court's resolution of disputed facts.  *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  The allegations in the complaint are taken as true in determining whether a sufficient basis

---

[2] The complaint's body and/or caption specifies that Preciado, Yielding, Jeffries, Dillard, and Liddy are sued in their official and individual capacities.  The complaint does not specify the capacity in which Amy, Bennett, Underwood, and Matthew are sued.

[3] On August 14, 2024, Hailey filed an amended complaint with leave of the Court.  Docs. #72, #75.  Two weeks later, United States Magistrate Judge Roy Percy struck the amended complaint on motion by the County, Liddy, and Preciado because the amended complaint differed significantly from the proposed amended complaint Hailey was granted leave to file.  Doc. #85.

[4] Based on its page numbering, Hailey's memorandum brief does not contain a page 4.  *See generally* Doc. #103.

[5] The County Defendants' memorandum briefs, excluding the certificates of service, exceed Local Rule 7(b)(5)'s 35-page limit.  In the interest of efficiency, and because Hailey does not mention that the County Defendants' briefs do not comply with Local Rule 7(b)(5), the Court excuses such noncompliance.

for jurisdiction exists. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The burden of establishing jurisdiction rests on the party asserting its existence. *Morris*, 852 F.3d at 419 (citing *Ramming*, 281 F.3d at 161). If subject-matter jurisdiction is lacking, the case must be dismissed. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the pleading, on its face, must demonstrate that there exists a plausibility for entitlement to relief."[6] *Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483, at *1 (5th Cir. May 31, 2024). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). The complaint's allegations "must be accepted as true and viewed in the light most favorable to the plaintiffs." *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021). But "conclusory allegations, unwarranted factual inferences, or legal conclusions" are not deemed true.[7] *Aris-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

When dismissal of a complaint is sought based on both lack of jurisdiction and failure to

---

[6] While pro se plaintiffs are held to a more lenient standard, they "must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

[7] Hailey argues the motion to dismiss should be treated as a motion for judgment on the pleadings under Rule 12(c) because Yielding, Dillard, and MDCPS answered the operative complaint. Doc. #101 at 17–18. A Rule 12(b)(6) motion may be treated as a motion for judgment on the pleadings if filed after an answer to the complaint. *Cox v. Richards*, 761 F. App'x 244, 247 (5th Cir. 2019); *see Armstrong v. Ashley*, 918 F.3d 419, 422 n.3 (5th Cir. 2019) ("District courts *may* consider untimely Rule 12(b)(6) motions as Rule 12(c) motions.") (emphasis added). Yielding, Dillard, and MDCPS answered the complaint before the present motion was filed so to that extent the Court could treat the motion as one seeking judgment on the pleadings. Docs. #30, #33, #53. Jeffries has not answered the complaint but service of process was not perfected on him until after the amended complaint was stricken, Doc. #86, so as to him the present motion is properly considered under Rule 12(b)(6). The Court is not aware of an instance where a 12(b)(6) motion is treated as a 12(c) motion as to some defendants but not others. The standard of review as to each is generally the same.

state a claim, the jurisdictional challenge should be addressed first. *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 481 (5th Cir. 2024).

**III**
**Relevant Factual Allegations**

On October 24, 2016, Hailey Taylor filed a petition for divorce and for a temporary restraining order in the "First District Chancery Court of Mississippi"[8] against Matthew Taylor, the father of her minor child. Doc. #1 at 5, 6. In November 2016, the chancery court issued a temporary restraining order instructing Matthew to remain 500 feet away from Hailey and their child. *Id.* at 6. Hailey and Matthew came to a custody agreement on November 16, 2017, which gave Hailey full custody of their child and Matthew reasonable, but supervised, visitation. *Id.* In 2018, Hailey and the child moved to Union County to live with Hailey's mother so the child could attend school there. *Id.* Matthew only "sporadically" exercised his visitation right. *Id.* at 7.

On October 15, 2020, Hailey and the child spent the night at her father's downstairs apartment which is in the same building as her family's restaurant—Phillips Grocery—as is the upstairs apartment where they previously resided, which mainly served as a storage area for Hailey's small business. *Id.* at 7. When Hailey woke her child on October 16, 2020, he had a slight fever so Hailey called his school and kept him home with her. *Id.* At the child's request, Hailey let him watch cartoons and she fell asleep. *Id.* Hailey woke to the sound of her child's voice in the area that connects the restaurant with the apartments. *Id.*

Unbeknownst to Hailey, employees of the restaurant (and Matthew's close friends)—Amy Taylor, Kimberly Underwood, and Tina Bennet—contacted Narcotics Officer Rick Preciado

---

[8] The complaint is unclear as to the county where Hailey filed for divorce and a temporary restraining order against Matthew. Marshall County is in Mississippi's 18th Chancery Court District. *See* https://18thchanceryms.com/ (last visited Sep. 24, 2025). Union County is in the 1st Chancery Court District. *See* https://1stchanceryms.com/ (last visited Sep. 24, 2025).

4

earlier that morning and accused Hailey of having drugs in the building. *Id.* at 5. Officer Preciado had already arrived at the building when Hailey began to search for her child. *Id.* at 8. When she did not find her child in the back foyer, Hailey headed up the back staircase to the upstairs apartment. *Id.* A man dressed in plain clothing, who Hailey later learned was Rick Preciado, then stepped out into the back foyer with Amy and Bennet and requested Hailey come down to talk with him but Hailey declined. *Id.* At that point, Preciado charged up the stairs behind Hailey. *Id.* Hailey told Preciado he was not allowed in the private residence areas of the building but Preciado responded, "You invited me up when you did not stop," to which Hailey replied, "No, I most certainly did not!" *Id.* Preciado grabbed Hailey's arm, twisted it behind her, slamming her face down on a chair at the landing, and instructed Amy to go to his truck and get his handcuffs, which made Hailey realize Preciado must be a police officer. *Id.* Upon that realization, Hailey screamed for help. *Id.* Preciado continued to hold Hailey's arm behind her back. *Id.* Amy returned with Preciado's handcuffs and assisted with her arrest. *Id.* at 9. Preciado took Hailey downstairs, pushed her toward the restaurant door, walked her outside, and forced her to sit on the restaurant's front porch. *Id.* at 9.

Preciado then searched the building without a warrant or consent. *Id.* Preciado also contacted Mississippi Department of Child Protection Services ("MDCPS") after stepping in feces left by Hailey's puppy. *Id.* Eventually, Preciado charged Hailey with possession of drug paraphernalia and resisting arrest. *Id.* The possession charge was later dropped, and Hailey pled no contest to the resisting arrest charge. *Id.* at 9–10.

MDCPS Field Officer Kaitlyn Yielding arrived on scene to investigate, and spoke to Hailey while she was handcuffed in the back of the police car. *Id.* at 10. After her investigation, which included speaking to the restaurant employees and taking pictures inside the apartment, Yielding

created a safety plan with Matthew which transferred the child's custody to him and denied Hailey from having any contact with the child. *Id.* Hailey was not included in the creation of the plan and did not sign or agree to it, nor was she informed that she was not allowed to contact the child. *Id.* at 10–11. The safety plan claimed the child was found in a home that contained methamphetamine, meth pipes, and pills. *Id.*

Upon her release the same evening, Hailey tried to regain custody of the child but Matthew instructed her to call MDCPS. *Id.* When Hailey protested the imposition of the safety plan, Yielding sent her a copy of a Safety Plan Order issued by Youth Court Referee Sarah Jean Liddy.

On November 10, 2020, a safety plan review hearing was conducted by Liddy. *Id.* at 12. At the hearing, Hailey was not allowed to speak and could not contest the jurisdiction of the court or removal of the child from her, cross-examine the witnesses called to testify against her, or present any evidence on her own behalf. *Id.* at 12. Preciado testified about the October 16, 2020, events. *Id.* Liddy ordered the case to move forward formally, and ordered Hailey and Matthew to submit to drug testing. *Id.* at 12. Hailey's results were negative for drugs; Matthew did not submit to the testing. *Id.*

A petition for formal proceedings was filed December 31, 2020. *Id.* at 13. After the adjudication hearing, Matthew's mother Debbie Fair assumed custody of the child. *Id.* Despite her instructions, Hailey's attorney did not inform her of the decision or file an appeal. *Id.*

In June 2022, Hailey was provided with the court orders and a copy of her case plan for the first time. *Id.* at 14. Hailey filed for a rehearing of the Liddy's orders on June 24, 2022, and filed a notice of appeal on July 21, 2022. *Id.* Hailey was instructed to appear back in the Youth Court for a September 21, 2022, rehearing of the Liddy's orders. *Id.*

On September 21, 2022, at Hailey's request, Liddy set a new hearing for October 4, 2022.

6

*Id.* On October 3, Cherodrick Jefferies, an MDCPS employee contacted Hailey and informed her the hearing had been continued to November 2, 2022, but no other party was told the hearing was continued. *Id.* When Hailey failed to appear on October 4, 2022, the hearing was dismissed. *Id.* It was not until November 2, 2022, that Hailey learned the hearing had not been continued. *Id.* On Hailey's motion, a new hearing was scheduled for December 6, 2022. *Id.* On that date, Liddy dismissed all pending motions without conducting the scheduled hearing. *Id.* at 15.

On January 4, 2023, Hailey filed a notice of appeal and a motion to proceed in forma pauperis with the Mississippi Supreme Court. *Id.* The Mississippi Supreme Court denied Hailey's in forma pauperis motion. *Id.* Unable to deposit the required costs, the Mississippi Supreme Court Clerk dismissed Hailey's appeal on February 16, 2023. *Id.*

## IV
## Analysis

The County Defendants argue dismissal of Hailey's claims against them is mandated due to expiration of the statute of limitations, lack of jurisdiction, judicial immunity, qualified immunity, and Hailey's non-compliance with the notice requirements of the Mississippi Tort Claims Act ("MTCA"). Doc. #99 at 9–19, 20–26. They also argue dismissal is proper due to Hailey's failure to state a conspiracy claim under 42 U.S.C. § 1985(3), *Heck v. Humphrey*'s bar on § 1983 claims seeking to invalidate criminal convictions, and Hailey's failure to meet the *Monell* standard. *Id.* at 19–20, 26–30. Hailey responds that the County Defendants' arguments are "meritless," she "has met the pleading standard to state a claim for relief," and "this Court has subject matter jurisdiction [over her] claims." Doc. #102 at PageID 996; Doc. #103 at 6–7, 32–34. The County Defendants reply that Hailey's response is "replete with frivolous assertions, meritless arguments and inconsistent allegations" which "justify dismissal." Doc. #105 at 1.

## A. Statute of Limitations[9]

The County Defendants argue that "[a]s to [Hailey]'s federal claims under § 1983 and § 1985, the statute of limitations is determined by the forum state's personal injury limitations period;" "[Hailey's] § 1983 claims are governed by Mississippi's general three-year statute of limitations in § 15-1-49;" the "claims against … Preciado are based solely upon his involvement in [Hailey's] arrest on October 16, 2020;" and "[Hailey's] Complaint was not filed until October 18, 2023, more than three years later." Doc. #99 at 18 (citing *Cohly v. Miss. Insts. of Higher Learning*, No. 23-60232, 2024 WL 65432, at *2 (5th Cir. Jan. 5, 2024)).

Hailey responds that "[t]he limitations period begins to run when the plaintiff 'becomes aware that he has suffered an injury or has sufficient information to know that he has been injured,'" Doc. #103 at 17 (quoting *Pitrowski v. City of Hou.*, 51 F.3d 512, 516 (5th Cir. 1995); "[i]t was only upon hearing Preciado's statement at the safety plan review on November 10, 2020, that [she] learned … Preciado and [the restaurant's employees] had conspired to allow Kim [Underwood] to remove the minor child from the premises" and "Preciado returned upstairs to search the entire building," *id.*; and whatever "remaining injuries" existed beyond the safety plan review hearing accrued "after her possession of paraphernalia charge was dismissed in justice court on August 3, 2021, as that was when [she] could first 'file suit and obtain relief,'" *id.* at 18 (quoting *Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762 (7th Cir. 2013)).[10]

The County Defendants reply that "[Hailey] admit[ted] her claims against … Preciado stem from her arrest on October 16, 2020, thus those § 1983 claims are time-barred," Doc. #105 at 3;

---

[9] Because all the claims against Liddy are dismissed below, the Court will only discuss the expiration of the statute of limitations as to the claims against Preciado.

[10] The quoted language in *Woods* appears in a parenthetical to another case and not in the text of the opinion. *See Woods*, 710 F.3d at 766 (citing *Wallace v. Kato*, 549 U.S. 384, 388-91 (2007)).

"[Hailey] 'became aware of the injuries upon which her claims for excessive force, assault and battery, unreasonable search and seizure, and false arrest on the day that those injuries occurred,' not when the underlying charges were eventually disposed of,'" *id.* and "the Fifth Circuit has 'repeatedly held that a pending criminal charge does not delay accrual of an excessive force claim arising out of an arrest for that charge,'" *id.* (quoting *Morrill v. City of Denton*, 693 F. App'x 304, 307 (5th Cir. 2017)).

Even construing the pleadings in Hailey's favor, the statute of limitations has expired as to her § 1983 and § 1985 claims against Preciado. Though Hailey claims not to have known Preciado searched her private residence until the safety plan review hearing,[11] Doc. #103 at 17, her complaint alleges that after Preciado arrested her, took her outside the restaurant, and forced her to sit on the front porch, he searched the entire building, Doc. #1 at 9. So, based on her allegations, Hailey's unlawful search claim against Preciado began to accrue on October 16, 2020, the day of her arrest. Since Hailey filed her complaint in this case on October 18, 2023—two days after the three-year period elapsed—her unlawful search and seizure claim against Preciado is barred by the statute of limitations.[12] The Court agrees most of Hailey's other § 1983 and § 1985 claims against Preciado stem from the same October 16, 2020, arrest, meaning that those claims are barred as well. Those claims include conspiracy to interfere with civil rights,[13] violation of First

---

[11] Hailey cites her complaint for this factual assertion but the cited paragraph of the complaint merely states, "Liddy called Preciado to testify to the events that occurred on October 16, 2020." Doc. #1 at 12.

[12] Even if the statute of limitations had not expired, this claim would have been dismissed as *Heck*-barred because it necessarily challenges the lawfulness of Hailey's arrest, as an element of each is the unlawful nature of the arrest. Doc. #1 at 27–28, 29–30; *see Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) ("If Connors were to prevail on his unlawful seizure claim, he would necessarily undermine the validity of these convictions.").

[13] Even if the statute of limitations had not expired, this claim would be dismissed because Hailey fails to allege discrimination based on any class membership she possesses, or how any of her protected characteristics played a part in any of the County Defendants' actions. *See Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("This kind of conspiracy requires some form of class-based discrimination."). While Hailey suggests being a domestic violence survivor could qualify as a protected class under § 1985, she cites no authority for such proposition.

Amendment, false imprisonment,[14] excessive force,[15] and abuse of process/power.

### B. Sovereign immunity

The County Defendants argue this Court lacks jurisdiction over Hailey's official capacity claims because "[u]nder the Eleventh Amendment, the state, its agencies, and its officers, are immune from lawsuits in their official capacities," Doc. #99 at 15–16 (quoting *Bennett*, No. 1:23-cv-67, 2023 WL 7134926, at *3 (N.D. Miss Oct. 30, 2024)) (internal quotation marks omitted); "an action that is barred by sovereign immunity should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)," *id.* (quoting *Brown v. Lee*, No. 3:19-cv-33, 2021 WL 1557410, at *3 (S.D. Miss. Mar. 29, 2021) (emphasis omitted); and "[t]he Fifth Circuit has 'expressly recognized that state court judges are entitled to Eleventh Amendment immunity,'" *id.* at 16 (citing *Bennett*, 2023 WL 7134926, at *3).

Hailey responds that "[t]he Defendants are county employees so the state's Eleventh Amendment immunity would not extend to them, nor does it apply to individuals or 'persons' subject to suit," Doc. #103 at 14 (quoting *Crane v. Tex.*, 759 F.2d 412 (5th Cir. 1985)); "[t]he Supreme Court held in *Monell* that … local governments are 'persons' … under 42 U.S.C. § 1983," *id.* at 14–15 (quoting 436 U.S. 658, 690 (1978)); and "the Fifth Circuit clearly stated in *Black v. North Panola School Dist*, 461 F.3d 584 (5th Cir. 2006) that 'counties … are not considered arms of the state for purposes of Eleventh Amendment immunity," *id.* at 15. "[Hailey] recognizes the official capacity claims against … Preciado and Liddy[] may be duplicative in respect to …

---

[14] Even if the statute of limitations had not expired, this claim would have been dismissed as *Heck*-barred because it necessarily challenges the lawfulness of Hailey's arrest, as an element of each is the unlawful nature of the arrest. Doc. #1 at 27–28, 29–30; *see Bass v. Parkwood Hosp.*, 180 F.3d 234, 245 (5th Cir. 1999) ("Under Mississippi law, false imprisonment requires proof only that the plaintiff was detained and that the detention was unlawful.").

[15] Even if the statute of limitations had not expired, this claim would have been dismissed as *Heck*-barred because it would negate Hailey's conviction of resisting arrest since excessive force by definition requires Hailey's arrest to have been unreasonable and a violation of the Fourth Amendment. *See Baker v. Coburn*, 68 F.4th 240, 247 (5th Cir. 2023) ("A seizure is unreasonable if it involves excessive force."); U.S. CONST. amend. IV.

Marshall County, as their employer and the entity responsible for any actions taken in their official capacity." *Id.*

The County Defendants reply that "[Hailey] admits that her official capacity claims against Officer Preciado and Referee Liddy are duplicative and barred by Eleventh Amendment immunity." Doc. #105 at 2–3.

Whether the Eleventh Amendment affords sovereign immunity to an entity or person in their official capacity depends on whether the real party in interest is the state. *Lewis v. Clarke*, 581 U.S. 155, 161–62 (2017). The Eleventh Amendment "bars suits against States but not lesser entities." *Alden v. Maine*, 527 U.S. 706, 756 (1999). "Accordingly, lesser governmental entities such as counties … are not considered arms of the state for purposes of Eleventh Amendment immunity." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 596 (5th Cir. 2006) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 67 n.7 (1989)). For these reasons, Marshall County does not qualify as an arm of the state under the Eleventh Amendment and therefore is not entitled to immunity from suit like a sovereign. Because of this, Preciado, as a county employee, is also not entitled to sovereign immunity.

As to Liddy, because the Court concludes she is entitled to judicial immunity for the reasons explained below, the Court declines to address whether she is entitled to Eleventh Amendment immunity.[16]

---

[16] It appears Liddy would be entitled to sovereign immunity to the extent as a Youth Court referee, she is an arm of the state. *See, e.g., Bowen v. Keys*, No. 320-CV-296, 2020 WL 4228160, at *5 (S.D. Miss. July 23, 2020) ("The Simpson County Chancery Court 'functions as part of the state court system, so it is an "arm of the state" and the plaintiff's claims against it are barred by the Eleventh Amendment.'") (quoting *Davis v. City of Vicksburg*, No. 3:13-cv-6, 2015 WL 4251008, at *2 (S.D. Miss. July 13, 2025)). As a Youth Court referee, Liddy provides the delegated functions of a Marshall County Youth Court judge, *see* Miss. Code Ann. § 43-21-111 ("A referee shall possess all powers and perform all the duties of the youth court judge in the hearings authorized to be heard by the referee."), and would be afforded the same immunity as a Youth Court judge.

### C. Judicial immunity

As to Liddy, the County Defendants argue all Hailey's claims against her are barred by judicial immunity because "[t]here can be no reasonable question that all actions taken by Referee Liddy were solely in her judicial capacity."[17]  Doc. #99 at 24.  Hailey responds that Liddy is not entitled to judicial immunity because Liddy "was performing an administrative task … when she approved a safety plan created by [MDCPS]," not a judicial function because "[a]ny action taken before [the filing of a petition] is outside of [youth court] jurisdiction."  Doc. #103 at 20, 24.  The County Defendants reply that "each 'Order was a judicial act, and Referee Liddy was not wholly without jurisdiction to grant it [and] Referee Liddy is thus entitled to absolute judicial immunity.'"  Doc. #105 at 4 (quoting *Dugas v. Parker*, 124 F. App'x 824, 825 (5th Cir. 2005)).

Liddy is entitled to judicial immunity under the circumstances here.  The Court rejects Hailey's arguments that Liddy's approval of the safety plan was an administrative act.  While MDCPS may not have "legal authority to remove a child from their custodian," Doc. #103 at 21, the question is whether the youth court has such authority—which it certainly does.  *See Vance v. Miss. Dept. of Hum. Servs.*, 203 So. 3d 11, 15 (Miss. Ct. App. 2016) ("[T]he youth court has authority to remove a child from a parent's custody pursuant to its 'exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child, or a dependent child[.]'") (quoting *Dept. of Hum. Servs. v. Blount*, 913 So. 2d 326, 220 (Miss. Ct. App. 2005)).[18]  By extension, Liddy's approval of the safety plan was an

---

[17] Because the County Defendants argue Liddy is entitled to judicial immunity, they assert "further analysis of her qualified immunity is unnecessary" despite also asserting she is entitled to qualified immunity.  Doc. #99 at 22.

[18] Jurisdiction of the youth court is established when proceedings are commenced, rather than when neglect has been determined.  Proceedings are commenced "when a report or complaint of a child within the jurisdiction of the youth court requires an action by the youth court or by the chancery court or by a referee appointed."  *D.K. v. Youth Ct.*, 377 So. 3d 991, 1002–03 (Miss. Ct. App. 2023).  So, the youth court had jurisdiction over Hailey's child once a report alleging neglect was made to Liddy.

adjudication of rights and obligations, placing it within the meaning of a judicial act. *See* Miss. Code Ann. § 43-21-153 ("the youth court shall have full power and authority to issue all writs and processes including injunctions necessary to the exercise of jurisdiction and to carrying out the purpose of this chapter"). Given the broad construal in favor of immunity, Liddy's approval of the safety plan is entitled to judicial immunity.[19] *Kemp v. Perkins*, 324 F. App'x 409, 412 (5th Cir. 2009).[20]

### D. Qualified Immunity

The County Defendants contend "[e]ven if all of [Hailey's] claims against Officer Preciado were not time-barred … Officer Preciado is entitled to qualified immunity."[21] Doc. #99 at 21. In response, Hailey argues that a full "analysis of [Preciado's] right to receive qualified immunity should have been performed." Doc. #103 at 19. The County Defendants reply that it was Hailey's "burden to show qualified immunity is inapplicable by pointing this Court to a sufficiently similar case which would have placed the alleged constitutional violations beyond debate," which "she has not and cannot do." Doc. #105 at 4.

The County Defendants' assertion of qualified immunity shifted the burden to Hailey to show a violation of a clearly established constitutional right occurred. *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020). Hailey does not address the application of qualified immunity to her claims against Preciado for violation of her right to familial association or fabrication/misrepresentation of evidence and therefore fails to meet her burden of overcoming the

---

[19] Even if Liddy as a referee is not entitled to judicial immunity, the purposes and policies of judicial immunity properly fit the circumstances alleged in the complaint concerning Liddy's approval of the safety plan and would extend the immunity afforded to a Youth Court judge to Liddy by virtue of her delegated duties.

[20] The Court declines to discuss the federal claims against Liddy further since they will be dismissed on judicial immunity grounds.

[21] All of Hailey's claims against Preciado have been dismissed based on the expiration of the statute of limitations, except for her claims against Preciado for violation of her right to familial association or fabrication/misrepresentation of evidence.

qualified immunity defense as to those claims.  Consequentially, these claims will be dismissed.[22]

### E.  MTCA Notice

The County Defendants argue "[a]ll of [Hailey]'s state law claims are procedurally barred as [she] never gave notice as required by Mississippi Code Ann. § 11-46-11."  Doc. #99 at 16.  In response, "Hailey … does not deny she provided no pre-suit notice to [the County Defendants]," as "[she] was unaware she must still comply with the 'Notice of Claim' provision when initiating a suit in federal court."[23]  Doc. #103 at 15.  Because Hailey admits she failed to comply with the MTCA's pre-suit notice provisions, Hailey's state law claims are barred by the MTCA.  *Burnett v. Hinds Cnty.*, 313 So. 3d 471, 475–76 (Miss. 2020).

**V**

**Conclusion**

The County Defendants' motion to dismiss [98] is **GRANTED**.

**SO ORDERED**, this 30th day of September, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[22] The Court only addresses these two claims since all other claims against Preciado are dismissed based on the expiration of the statute of limitations or Hailey's failure to meet the MTCA notice requirement.

[23] Hailey also argues the MTCA does not apply to her claims because Preciado and Liddy were not acting within the scope of their employment at the time they committed the alleged injuries and because the MTCA does not apply to requests for injunctive relief.  Doc. #103 at 16.  Mississippi has not waived its immunity from suit for claims outside the MTCA.  *See Burnett*, 313 So. 3d at 477 ("Generally, governmental entities are immune from suit … [and] have not waived immunity for the conduct of an employee 'if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.'") (citing Miss. Code Ann. §§ 11-46-3, 11-46-5(2), 11-46-7(2)).  And though the MTCA does not apply to claims for injunctive relief, Hailey does not ask for injunctive relief as to her state law claims.  Doc. #1 at 40–41.